IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

TO'QUANSHA OSHMIR FLOYD, individually    *
and as administrator of the Estate of    *
De'Ahmoz Oshmic Floyd, deceased, and     *
JAQUESHA PHELPS, individually and as      *
natural guardian of C.F., a minor,        *
                                          *
                                          *
        Plaintiffs,                       *
                                          *
        v.                                *    CV 325-060
                                          *
GEORGIA DEPARTMENT OF CORRECTIONS;        *
VIRGIL H. BROWNLEE; BOBBY CLARK; LEWIS    *
GIDDENS; PATRICK JONES; CANDACE SMITH;    *
MACI LAREASE UNDERWOOD; QUINN WHITEHEAD;  *
MISTY MICHELLE WINTER; TOMEKA PERRY       *
SPIRES; TWILA DINKINS; TONJA T. KEITH;    *
VERONICA M. STEWART; JERMAINE M. WHITE;   *
RICKEY W. WILCOX; WILLIAM DARRELL         *
WOOTEN; JOANN FULFORD; and JOHN/JANE      *
DOES 1-10,                                *
                                          *
        Defendants.                       *

_____

O R D E R

_____

This case arises out of the stabbing death of De'Ahmoz Oshmic

Floyd by other inmates on April 18, 2023, while he was incarcerated

at Telfair State Prison in Georgia.    Georgia Department of

Corrections ("GDOC") and sixteen individual prison officials have

been named as Defendants in the Complaint, which was filed in state

court on April 16, 2025.    The case was removed to this Court

because of claims brought under 42 U.S.C. § 1983 for alleged

violations of the United States Constitution.  Defendants now move for judgment on the pleadings with respect to Plaintiffs' state law tort claims.  This matter has been fully briefed and is ripe for consideration.

## I.  THE COMPLAINT

The following facts as alleged in the Complaint are taken as true, and the allegations are construed in the light most favorable to Plaintiffs.  See Hart v. Hodges, 587 F.3d 1288, 1290 n.1 (11th Cir. 2009).

When Mr. Floyd, the decedent, entered into the GDOC prison system in 2019, he was a member of a large, nationwide gang. (Compl., Doc. No. 1-2, ¶¶ 76-77.)  Mr. Floyd renounced his gang affiliation while imprisoned at GDC's Ware State Prison, which caused the gang to put a "hit" on him.  (Id. ¶¶ 78-79.)  Mr. Floyd was transferred to Hancock State Prison and initially placed in administrative segregation.  Within 48 hours of being placed in the general population of Hancock State Prison, he was stabbed. (Id. ¶¶ 81-85.)

Mr. Floyd survived this attack and was transferred to Telfair State Prison ("TSP") on March 7, 2023.  (Id. ¶ 88.)  Again, Mr. Floyd was initially placed in administrative segregation upon arriving at TSP.  (Id. ¶ 92.)  On April 12, 2023, Mr. Floyd was placed in general population even though he had told several

2

officers that he was not safe there because his former gang had ordered a "hit" on him. (<u>Id.</u> ¶¶ 93-94.)  Members of Mr. Floyd's former gang would not allow him to sleep in his assigned cell, so he had to sleep in the dayroom. (<u>Id.</u> ¶ 98.)

Plaintiffs allege that TSP staff members, including the Warden, knew all of the above-stated facts, yet Mr. Floyd was not placed back into administrative segregation. (<u>Id.</u> ¶¶ 99-107.)  On April 18, 2023, Mr. Floyd was attacked and stabbed multiple times by members (at least three) of his former gang. (<u>Id.</u> ¶¶ 108-09.) He bled to death before the EMS arrived on the scene. (<u>Id.</u> ¶ 122.)

The Complaint asserts nine causes of action, five of which are state law tort claims against the GDOC,[1] to wit:  Count Two (failure to place Mr. Floyd in protective custody); Count Four (failure to adequately monitor the inmates in Mr. Floyd's dormitory); Count Six (failure to conduct adequate inspections for weapons in the dormitory); Count Seven (failure to provide prompt medical treatment of Mr. Floyd); and Count Nine (failure to create, enforce, and/or train on policies to place at-risk inmates in protective custody, adequately monitor inmates, perform regular inspections, and render immediate aid).  Through its motion for

---

[1] Plaintiffs concede in brief that the state law tort claims are not asserted against the individual Defendants.  Accordingly, the Court need not address that part of Defendants' motion for judgment on the pleadings that seeks immunity for the individual Defendants on Plaintiffs' state law tort claims.

judgment on the pleadings, Defendant GDOC contends that these claims are barred by sovereign immunity.

## II.  LEGAL STANDARD

"After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." Cunningham v. Dist. Att'y's Off. for Escambia Cnty., 592 F.3d 1237, 1255 (11ᵗʰ Cir. 2010) (citation omitted).

The legal standards applicable to Rule 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss are the same.  Carbone v. Cable News Network, Inc., 910 F.3d 1345, 1350 (11ᵗʰ Cir. 2018).  That is, pursuant to the Twombly/Iqbal paradigm, a claim will be dismissed if it fails to "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct."  Id. at 679; GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1254 (11ᵗʰ Cir. 2012) (stating that a plaintiff must necessarily "include factual allegations for each

4

essential element of his or her claim").  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 566 U.S. at 678-79.  Also, while the facts alleged in the complaint are accepted as true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 268 (1986).

### III.  ANALYSIS

Under the State Constitution of Georgia, sovereign immunity of the State and its departments and agencies can only be waived by the state legislature.  Ga. Const. of 1983, art. 1, § II, ¶ IX(e).  Pursuant to this constitutional authority, the Georgia Legislature enacted the Georgia Tort Claims Act ("GTCA") in 1992 as a waiver of the state's sovereign immunity for various tort claims.  O.C.G.A. § 50-21-20 et seq.  The GTCA provides thirteen exceptions that limit the waiver of sovereign immunity.  At issue here is the "assault and battery" exception.  See O.C.G.A. § 50-21-24(7).[2]

---

[2] Specifically, the GTCA provides: "The state shall have no liability for **losses** resulting from . . . (7) Assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contractual rights." O.C.G.A. § 50-21-24(7) (emphasis added).  "Thus, where a loss results from assault or battery, there is no waiver of sovereign immunity, even though 'a private individual or entity would be liable under like circumstances.'"  Dep't of Human Resources v.

5

Defendant GDOC claims sovereign immunity to the state tort claims asserted by Plaintiffs, contending that Plaintiffs' loss (the death of Mr. Floyd) was caused by assault and battery and is therefore excepted from the GTCA waiver.  Plaintiffs respond that the stabbing by other inmates was merely one proximate cause of Mr. Floyd's death.  The negligent acts of Defendant GDOC (failure to protect, failure to monitor, and failure to inspect) are other proximate causes of his death.  Plaintiffs rely on the Georgia Supreme Court's decision in <u>Ga. Dep't of Transp. v. Heller</u>, 674 S.E.2d 914 (Ga. 2009), for the proposition that the State is only entitled to immunity to the extent that the plaintiff's loss is proximately caused by an event, act, or omission falling within a GTCA exception, but it is not entitled to immunity to the extent that same loss is proximately caused by an event, act, or omission not falling within a GTCA exception.

In <u>Heller</u>, the plaintiff's wife was killed when the taxicab in which she was riding "spun out of control on a rain-slick interstate highway and hit a tree." 674 S.E.2d at 916.  The plaintiff sued the City of Atlanta because days before the accident, the tires of the taxicab had been inadequately inspected, and he sued the Georgia Department of Transportation ("GDOT") for its failure to maintain a proper clear zone for trees near the

---

Coley, 544 S.E.2d 165, 167 (Ga. Ct. App. 2000) (quoting O.C.G.A. § 50-21-23(a)).

6

highway. Id. Relying upon the City's negligent inspection, the GDOT claimed sovereign immunity because the GTCA provides an exception to its limited waiver for inspections and permitting. Id. at 916-17. The Heller court determined, however, that because the second event leading to the loss, the tree location, did not fall within any exception, the State had waived sovereign immunity for the car accident. Id. at 917. In so holding, the Heller court criticized a prior Georgia appellate court decision, which had stated:

> It is true that there may be more than one proximate cause of a plaintiff's loss. Regardless of the number of proximate causes, however, the plaintiff sustains only one "loss." This loss cannot be apportioned among the various proximate causes, with part of the loss attributed to one event and another part attributed to a different event.

Id. at 917-18 (quoting Dep't of Human Resources v. Coley, 544 S.E.2d 165 (Ga. Ct. App. 2000)). In the case at bar, Plaintiffs use this criticism to argue that Heller allows the waiver of sovereign immunity to stand when one of multiple proximate causes for a loss is not excepted by the GTCA. Thus, as Plaintiffs apply Heller here, the GDOC's waiver of sovereign immunity may be excepted because of the assault and battery of Mr. Floyd, but it is not waived with respect to the negligent acts of GDOC that led to the inmate attack.

Upon review of the applicable case law, the Court concludes that Plaintiffs stretch the Heller decision too far, particularly

in the face of the many Georgia cases that squarely foreclose their argument. In application of the GTCA's assault and battery exception, Georgia courts focus on the word "losses" in the exception. "Loss" in the GTCA is defined as "personal injury; disease, death; damages to tangible property . . . ; pain and suffering; mental anguish; and any other element of actual damages recoverable in actions for negligence." O.C.G.A. § 50-21-22(3). Accordingly, the focus of the assault and battery exception "is not on the government action taken, but upon the act that produces the loss." Dep't of Human Res. v. Hutchinson, 456 S.E.2d 642, 644 (Ga. App. 1995). So, in the very similar case of Southerland v. Ga. Dep't of Corr., 666 S.E.2d 383 (Ga. Ct. App. 2008), the Georgia Court of Appeals affirmed the dismissal of an inmate's mother's state tort claims against the GDOC for violating its policies respecting mentally disabled inmates because the loss (the death of her son) was caused by the assault and battery of the victim's cellmate. Id. at 385. Similarly, in the Coley case, the decedent's executrix sued a state agency for violating its duty to protect when it placed the victim in a hospital room with another patient who had threatened to kill someone. 544 S.E.2d at 167. Because the loss, the victim's death, resulted from an assault and battery, the state agency was protected by sovereign immunity even though the attack was committed by a third party. Id. at 168 ("[T]he focus in not on 'the government action taken; or 'the duty

8

allegedly breached by the government,' but on the act causing the underlying loss, and it is not necessary that such act have been committed by a state officer or employee."); see also Pelham v. Bd. of Regents of Univ. Sys. Of Ga., 743 S.E.2d 469, 473 (Ga. Ct. App. 2013) ("[I]f a plaintiff's injury was caused by an assault and battery committed by a third party, the state is immune from suit even if the assault and battery was facilitated by or resulted from the prior negligent performance of a state officer or employee." (citing Youngblood v. Gwinnett Rockdale Newton Cmty. Serv. Bd., 545 S.E.2d 875 (Ga. 2001))).

The Heller decision did not change the focus of the assault and battery exception to anything other than the plaintiff's loss. Rather, it rejected the Coley language which suggested that as long as one of a number of proximate causes connected to a plaintiff's loss falls under an exception to the waiver of sovereign immunity, the State would necessarily be immune from any suit stemming from such loss. Importantly, the Heller court faced a situation where there were two separate and independent events causing the plaintiff's loss (the negligent tire inspection and the negligent tree location). The Heller court distinguished the facts in Coley to emphasize that **the second** event in its case, the tree location, did not fall within any exception to the State's waiver of sovereign immunity. Heller, 674 S.E.2d at 917. In Coley and in the other cases cited hereinabove, there is not a former

and a latter event that caused the plaintiff's loss; there was but one event that fell within the assault and battery exception. And here, in the case at bar, there is but one event – the assault of Mr. Floyd by other inmates – that caused Plaintiffs' loss.[3] Accordingly, Defendant GDOC, a state agency, is entitled to sovereign immunity except as noted below.

On two separate occasions, federal district courts in Georgia have relied upon Heller to allow a state tort claim of negligent failure to provide timely medical care to proceed against a state entity in cases involving an assault on the plaintiff's decedent. In Bryant v. Harris Cnty., Ga., 2018 WL 5316359 (M.D. Ga. Oct. 26, 2018), the Middle District of Georgia allowed a plaintiff's wrongful death claim against the GDOC to stand because prison officials had failed to provide timely medical care to the prisoner after he had been attacked and beaten by a prison guard. In the case, the prisoner had collapsed playing basketball due to the injuries he had sustained from the guard's assault, but the GDOC had not provided timely medical care to the prisoner once he had collapsed. Id. at *10 (citing Heller).

Citing Bryant's use of the Heller decision, the Southern District of Georgia allowed a claim of negligence against the

---

[3] Stated another way, accepting Plaintiffs' allegations of the GDOC's negligent monitoring, inspection, and protection as true, these prior acts of negligence did not cause Mr. Floyd's death.

Department of Juvenile Justice ("DJJ") to stand because it failed to follow prison procedures in response to an inmate with a serious medical need. Muncey v. Hicks, 2024 WL 3733411 (S.D. Ga. Mar. 1, 2024). In the Muncey case, the DJJ allowed, organized, and encouraged juvenile inmates to engage in fights. After one fight, the plaintiffs' decedent was knocked unconscious; the DJJ officer dragged the unconscious inmate into a shower instead of immediately calling for medical help. The juvenile inmate died from his injuries two days later. The district court allowed a negligence claim based upon the delay in medical treatment to stand because it was a distinct event separate in time from the fight that led to the juvenile inmate's death. Id. at *10-11.

The question in the case at bar is whether Plaintiffs allege facts to show a second event, distinguishable from the inmate stabbing, that resulted in Mr. Floyd's death. In their Complaint, Plaintiffs allege that there were no staff members in the dormitory when Mr. Floyd was attacked and that there was no way for inmates to call for help. In fact, approximately 38 minutes after the stabbing, the first 911 call was made by a relative of an inmate who had texted his mother begging for help. Plaintiffs further allege that EMS arrived at TSP before TSP staff were even aware of the stabbing. Mr. Floyd allegedly died between 8:50 to 9:00 p.m., nearly an hour after he was stabbed. (Compl. ¶¶ 108, 112-17, 122-23.) Based upon these allegations, the Court concludes that the

11

failure to provide timely and adequate medical care is a second proximate cause of Mr. Floyd's death, separate and independent of the stabbing by other inmates. Based upon these allegations and the reasoning of Heller, Plaintiffs' claim under Count Seven against Defendant GDOC for the failure to provide prompt medical treatment is not barred by the assault and battery exception of the GTCA. Thus, Defendant GDOC is not entitled to sovereign immunity for Count Seven.

### IV. CONCLUSION

Upon the foregoing, Defendant GDOC's motion for judgment on the pleadings (doc. no. 7) as to Plaintiffs' state law tort claims in Counts Two, Four, Six, and Nine is **GRANTED**; the motion is **DENIED** with respect to Count Seven.

**ORDER ENTERED** at Augusta, Georgia, this _18th_ day of August, 2025.

_____
UNITED STATES DISTRICT JUDGE